UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOB R.,<br><br>     Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | CASE NO. C24-5558-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE** |

  Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ erred by (1) improperly discounting the opinion of examining psychologist Dr. Alysa Ruddell, Ph.D.; and (2) improperly evaluating step five of the sequential analysis by failing to consider Dr. Michael Regets, Ph.D.'s limitation to two-step commands and by failing to recognize the conflict between the vocational expert's (VE's) testimony and the DOT description of a wall cleaner. Dkt. 12. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

  Plaintiff is currently 54 years old, has attended some college, and has worked as a lubrication technician, engineer, camp attendant, systems analyst, IT manager, and kitchen helper. Tr. 76–77, 85, 94. In 2019 and 2021, he applied for Title II and Title XVI benefits,

respectively, alleging disability beginning August 1, 2016. Tr. 188–94, 207–13. After denials by the agency initially and on reconsideration, Tr. 85–109, the ALJ conducted a hearing and issued an August 2023 decision, Tr. 23–43. The ALJ found that plaintiff meets the insured status requirements through December 31, 2021, and has not engaged in substantial gainful activity since the alleged onset date of August 1, 2016. Tr. 29. The ALJ determined that plaintiff has the severe impairments of neurocognitive disorder, depressive disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.* The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 30. The ALJ assessed that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: able to understand, remember, and carry out simple instructions and tasks; able to use judgment to make simple work-related decisions; cannot perform work requiring a specific production rate (such as assembly line work) or work that requires hourly quotas; can deal with not more than rare changes in the work setting; no contact with the public; capable of working in proximity to but not in coordination with coworkers; occasional contact with supervisors; no work at heights or in proximity to dangerous conditions. Tr. 31. The ALJ determined that plaintiff is unable to perform any past relevant work. Tr. 37. At step five of the sequential analysis, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy: Wall Cleaner, DOT 381.687-026 (110,495 jobs); Hand Packager, DOT 920.587-018 (72,297 jobs); and Sexton, DOT 387.667-010 (61,996 jobs). Tr. 37–38. The ALJ therefore found that plaintiff has not been under a disability from August 1, 2016 to the date of the decision. Tr. 38. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–6.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING THE CASE WITH PREJUDICE - 2

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Court finds that plaintiff has not demonstrated that the ALJ failed to support the decision with substantial evidence or harmfully misapplied the law with respect to evaluating Dr. Ruddell's opinion or step five.

1. **Evaluation of Dr. Ruddell's Opinion**

Plaintiff contends the ALJ harmfully erred by discounting the examining opinion of examining psychologist Dr. Ruddell and by not integrating her opined marked limitations into the RFC assessment. 12, at 3–13. The Court disagrees.

The ALJ considers the persuasiveness of medical opinions using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or

1  inconsistent without providing an explanation supported by substantial evidence. *Woods v.*
2  *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).
3       In June 2020, psychologist Dr. Ruddell conducted a telephonic examination of plaintiff in
4  accordance with the measures taken at the time to stem COVID-19 infections. Tr. 392. Dr.
5  Ruddell reviewed DSHS notes and the psychological/psychiatric evaluation by Dr. William
6  Gibson, Ph.D., in which the diagnosis was for depression and the overall severity was "not
7  found." *Id.*; *see* Tr. 390–91 (Dr. Gibson Opinion). Dr. Ruddell noted, "Information in this
8  evaluation represents client report." *Id.* Dr. Ruddell opined that plaintiff had none or mild
9  restrictions in understanding, remembering, and persisting in tasks by following very short and
10 simple instructions; had moderate restrictions in six domains; and had marked restrictions in the
11 following: understanding, remembering, and persisting in tasks by following detailed
12 instructions; learning new tasks; adapting to changes in a routine work setting; maintaining
13 appropriate behavior in a work setting; completing a normal work day and work week without
14 interruptions from psychologically based symptoms; and setting realistic goas and planning
15 independently. Tr. 394. Dr. Ruddell rated the overall severity of plaintiff's limitations on basic
16 work activities as marked. Dr. Ruddell opined, however, that vocational training or services
17 would minimize or eliminate barriers to employment. *Id.* The ALJ found Dr. Ruddell's opinion
18 unpersuasive because (1) it was based on a one-time, brief examination conducted for non-
19 treatment purposes with scant review of the longitudinal evidence and overreliance on unreliable
20 self-reporting; (2) the marked limitations were not supported by the telephonic mental status
21 examination; (3) and the opinion was inconsistent with the medical record. Tr. 36. The ALJ cited
22 substantial evidence for discounting Dr. Ruddell's opinion.
23

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING THE CASE WITH PREJUDICE - 4

First, the ALJ found Dr. Ruddell's opinion to be unpersuasive because it was made after a one-time, telephonic examination for non-treatment purposes, poorly accounted for the longitudinal record, and relied heavily on plaintiff's discounted symptom testimony. Plaintiff argues that the ALJ's choice to discount the opinion based on Dr. Ruddell's status as an examining doctor "is faulty because the only medical opinions the ALJ found to be even partially persuasive were opinions given by a non-examining state agency consultant Michael Regets, Ph.D., and the one-time psychological evaluation provided by Joel Peterman, Ph.D., a non-treating provider." Dkt. 12, at 6–7. Plaintiff is correct that discounting Dr. Ruddell's opinion solely on the basis of her relationship to plaintiff would be unwarranted. Here, however, the ALJ referred to Dr. Ruddell's limited relationship to plaintiff as a way of contextualizing factors that undermined the opinion's reliability and supportability: it appeared that the only medical records Dr. Ruddell reviewed were Dr. Gibson's discounted opinion and the "Review of Medical Evidence" form completed by DSHS physician, Dr. Michael Jenkins-Guarnieri, M.D.; and the marked limitations appeared to be based heavily upon plaintiff's discounted symptom testimony. Plaintiff does not here challenge the ALJ's evaluation of the treating opinion of Dr. Gibson or of the non-examining opinion of Dr. Jenkins-Guarnieri. The ALJ rejected Dr. Gibson's opinion because it was poorly supported by treatment notes, amounted to a recital of plaintiff's symptoms and behaviors without evaluating his ability to function mentally, and was conclusory. Tr. 36. The ALJ rejected Dr. Jenkins-Guarnieri's opinion because it was non-examining, did not involve an interview of plaintiff, and only reviewed a handful of records. *Id.* Plaintiff also does not challenge here the ALJ's decision to discount plaintiff's symptom testimony as inconsistent with the objective evidence, medical opinions, and his own reported and demonstrated functional ability. Tr. 31–32. Such evidence included plaintiff not seeking mental-health treatment for years

after the 2014 or 2015 motorcycle accident; very little psychological counseling/therapy evidence in the record; an MRI of the brain that was normal; not particularly troubling mental status exams in 2019; self-reports of visiting his parents daily, visiting friends every few months, doing work for friends, and spending hours on the computer; and not having medical evidence on file for 2021, 2022, and 2023. Tr. 32–34. Although the ALJ couched Dr. Ruddell's limited relationship to plaintiff as a reason for discounting the opinion, more salient were the underlying concerns about the reliability and supportability of Dr. Ruddell's opinion given her limited review of any evidence aside from Dr. Gibson's opinion, Dr. Jenkins-Guarnieri's opinion, and plaintiff's testimony, all of which appeared to overstate the debilitating nature of plaintiff's symptoms. Although plaintiff complains that the ALJ should have cited more opinions that contradict Dr. Ruddell's, plaintiff's medical record has a glaring hole for three years in which plaintiff provides no medical evidence whatsoever to substantiate his claim of debilitating mental limitations.

Second, the ALJ discounted Dr. Ruddell's opinion because the opined marked limitations were not supported by the contemporaneous mental status examination. Tr. 36. The ALJ noted that although plaintiff presented telephonically as depressed and had some difficulty in recall and concentration, he was interactive and cooperative with normal attitude, behavior, speech, stream of mental activity, fund of knowledge, and abstract thinking. *Id.* As plaintiff notes, this broad description of the mental status examination omits more detailed determinations, such as that plaintiff appeared paranoid,[1] was impaired to time,[2] and was, despite having abstract thinking

---

[1] "Paranoia consists of feeling 'I'm a burden.' He avoids people. 'I don't want to bring them down. I'm not who I was. I can't do the things I used to do.'" Tr. 395.

[2] The opinion of Dr. Joel S. Peterman, Ph.D., contradicts this determination: "The patient was generally oriented to time (stated it was the 4th when it was the 3rd)[,] place, and person. Tr. 347.

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING THE CASE WITH PREJUDICE - 6

within normal limits with respect to conversation, exhibiting impairment regarding proverbs and executive functioning. Tr. 395. On the other hand, the ALJ also did not particularly emphasize that Dr. Ruddell specifically noted that plaintiff appeared to display no difficulties with insight/judgment. *Id.* Any error that ALJ may have committed regarding the characterization of the mental status exam is, however, rendered harmless because it was not unreasonable for the ALJ to conclude that the findings of the mental status exam administered by Dr. Ruddell were more consistent with the assessed RFC of moderate mental limitations than they were with Dr. Ruddell's opined marked limitations.

Third, the ALJ found that Dr. Ruddell's opinion was inconsistent with the longitudinal medical record that better supported only moderate mental limitations. Tr. 36. Elsewhere in the decision, the ALJ gave greater weight to conflicting medical opinions found to be more persuasive. For example, the ALJ gave some weight to the December 2019 examining neuropsychological opinion of Dr. Joel S. Peterman, Ph.D. Tr. 35 (citing Tr. 346–51). The ALJ found Dr. Peterman's opinion to be persuasive in that it was based on neurocognitive testing that showed deficits in some areas but in many tests indicated average scores, all of which was consistent with the moderate limitations accounted for in the assessed RFC. Tr. 35. The ALJ also found the reviewing opinion of Dr. Michael Regets, Ph.D., to be persuasive, though adding and tightening limitations based on Dr. Peterman's findings.[3] Tr. 35. Dr. Regets found no more than moderate mental limitations and opined a number of social restrictions, to which the ALJ also added language to the RFC about no work requiring production rates and hourly quotas, as well as no work at heights or in proximity to hazardous conditions. *Id.*; *see* 105–07. The ALJ's

---

[3] The ALJ rejected the opinion of Dr. Renee Eisenhauer, Ph.D., because it contained too *few* non-exertional limitations. Tr. 34; *see* Tr. 91–93 (Dr. Eisenhauer's opined mental RFC).

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING THE CASE WITH PREJUDICE - 7

evaluation of the opinions of Drs. Peterman and Regets is accurate and reasonable and constitutes substantial evidence for the ALJ's determination to discount Dr. Ruddell's opinion as inconsistent with the medical evidence.

Plaintiff has vigorously and plausibly demonstrated how Dr. Ruddell's opinion could be supported by the mental status examination and could be viewed as consistent with the longitudinal record. Nonetheless, even if the evidence is "susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Plaintiff has not demonstrated that the ALJ's evaluation of Dr. Ruddell's opinion was unreasonable, unsupported by substantial evidence, or the result of harmful legal error.

### 2. Evaluation of Step Five

Plaintiff argues that the ALJ harmfully erred by failing to properly consider Dr. Regets's limitation to two-step commands and by not reconciling an apparent conflict between the VE's testimony and the DOT description of wall cleaner. Dkt. 12, at 13–16. The Commissioner appears to concede that the ALJ failed to consider Dr. Regets's limitation to two-step commands with respect to the jobs of hand packager and sexton. Dkt. 9–10. Nonetheless, the Commissioner contends that this error was harmless because there is no conflict between the VE's testimony and the description of wall cleaner, which has 110,495 jobs in the national economy. Dkt. 16, at 10–12; Tr. 38. The Court finds that any step five error with respect to the jobs of hand packager and sexton was rendered harmless by the conclusion that plaintiff could perform the job of wall cleaner.

The ALJ precluded plaintiff from working at heights and the VE testified that plaintiff could work as a wall cleaner. The job of wall cleaner is described as follows:

> Cleans interior walls and ceilings of offices, apartments, and other buildings, by hand or by use of wall-washing machine: Cleans walls and ceilings by hand, using sponge and soapy water or chemical solution, or presses lever in nozzle of machine to control flow of solution and moves nozzle fitted with porous pad over surfaces, exerting sufficient pressure to remove dirt and grease. May estimate cost of cleaning walls and submit bids.

DOT 381.687-026, 1991 WL 673260. Plaintiff contends that the job of wall cleaner conflicts the RFC restriction of "no work at heights" because the position involves occasional climbing. That is, plaintiff argues that occasional climbing means that plaintiff would be off the ground from time to time when performing wall cleaner job duties thereby implying work at heights. Moreover, plaintiff argues that "since Plaintiff would need to clean 'walls and ceilings by hand' it can be understood that he would need to be at a certain height to clean the walls and ceilings of an office, department, or other building." Dkt. 12, at 15.

Plaintiff's creative argument is unpersuasive. Climbing and heights are separate categories in the DOT. According to the DOT, the wall cleaner job involves occasional climbing but no "high exposed places." DOT 381.687-026, 1991 WL 673260. According to *Selected Characteristics of Occupations*, climbing is a physical/postural activity that involves "[a]scending or descending ladders, stairs, scaffolding, ramps, poles, and the like." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") (1993), U.S. Department of Labor, Appendix C, at C-4. Working at heights is an environmental condition involving "[e]xposure to possible bodily injury from falling." SCO, Appendix D, at D-2. The two conditions are "not coterminous." *Duncan v. Astrue*, 2012 WL 5877510, at *4 (W.D. Wash. Nov. 1, 2012), *report and recommendation adopted*, 2012 WL 5877495 (W.D. Wash. Nov. 19, 2012). Plaintiff here "conflate[s] the postural limitation of climbing with the environmental limitation of exposure to unprotected heights." *April B. v.*

ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION
AND DISMISSING THE CASE WITH PREJUDICE - 9

*Kijakazi*, 2023 WL 8717170, at *11 (M.D.N.C. Dec. 18, 2023), *report and recommendation adopted*, 2024 WL 1532119 (M.D.N.C. Jan. 19, 2024). The ALJ's limitation on "no work at heights or in proximity to dangerous conditions," Tr. 31, was a non-exertional limitation related to plaintiff's mental state. Plaintiff was not assessed with any severe physical impairments and the RFC contains no physical/postural limitations. Tr. 29, 31.

Moreover, contrary to plaintiff's assertion, neither the job of wall cleaner, as defined in the DOT, nor the equivalent occupation in O*Net Online, suggests exposure to heights to be a fundamental aspect of the job merely on the basis that it may involve occasional climbing. The DOT description notes that cleaning of walls or ceiling "by hand *or* by use of wall-washing machine." DOT 381.687-026, 1991 WL 673260 (emphasis added). That is, the wall cleaner need not leave the ground to wash a ceiling. In O*Net Online, the comprehensive online database sponsored by the U.S. Department of Labor/Employment and Training Administration, the DOT job of wall cleaner maps to "Janitors and Cleaners, Except Maids and Housekeeping Cleaners," 37-2011.00, an occupation that entails climbing. O*NET Online, found at https://www.onetonline.org/link/details/37-2011.00 (last accessed Feb. 11, 2025). In the scale to measure how frequently this job is exposed to high places, Janitors and Cleaners are given a score of 14 out of 100, which amounts to somewhere between 0 (never) and 25 (once a year or more but not every month). O*NET Online, https://www.onetonline.org/find/descriptor/result/4.C.2.c.1.c (last accessed Feb. 11, 2025). That is, even for the equivalent job of janitor and cleaner that involves climbing, the regularly updated O*NET Online suggest there is virtually no exposure to high places. Other jobs with the same score of 14 include Architectural and Civil Drafters, Photographers, and Robotics Engineers. *Id.*

Even presuming the ALJ erred by failing to consider Dr. Regets's limitation to two-step commands at step five, the error is harmless. Plaintiff cannot demonstrate that the ALJ's step five determination that plaintiff could perform the job of wall cleaner was unreasonable, unsupported by substantial evidence, or the result of harmful legal error. Plaintiff thus cannot show a harmful step five error.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 12th day of February, 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge